The Neptune Insurance Company *vs.* Benjamin Robinson.—*December*, 1840.

Upon a case stated, the court is not at liberty to make inferences of fact.

There are many cases, in which negligence will be visited with the same penalty, as a wilful design to do wrong; as if a party, with knowledge that his agent is in treaty for insurance, gets information of a material fact, he is bound promptly to use the means of communicating it, and his omission to do so, will avoid the policy, independently of any proof of bad motives for the delay.

There is no principle however, which requires the assured, to use all accessible means of acquiring information material to the risk, up to the last instant of time; and therefore his omission to call at the post office, where a letter was received on the morning of the day the insurance was effected, containing material information, did not vitiate the policy.

Appeal from *Baltimore* County Court.

This was an action of *assumpsit*, brought by the appellee against the appellant, on their policies of insurance, by which they undertook to assure the appellee; lost or not lost, at and from *Richmond*, *Virginia*, to *Portland*, *Maine*, and at and from thence, with the liberty of touching and trading at *New York*, to *Baltimore*, three thousand dollars, on the good schooner *Wildee*, of *Baltimore*, value thereat, whereof was master for that voyage, or whoever should be master in the said vessel; beginning the adventure upon the said vessel as aforesaid, and to continue during the voyage aforesaid on the vessel, until she should be arrived and moored at anchor at *Baltimore*, twenty-four hours in safety, &c. Also on her freight.

The plaintiff declared for a total loss, and the defendant pleaded *non-assumpsit*, on which issue was joined.

The case was submitted to the county court on the following statement of facts:

It is admitted, that *Benjamin Robinson*, the owner of the schooner *Wildee*, of *Baltimore*, plaintiff in this case, on the 20th April, 1837, effected with the defendant an insurance by two policies herewith exhibited, marked A and B, and hereby made part of this statement, on the said vessel, to amount of three thousand dollars, and on her freight three hundred and

fifty dollars, upon a voyage from *Richmond* to *Portland*, and at and from thence to *Baltimore*, with liberty of touching and trading at *New York*. That the said schooner, staunch, strong and sea worthy in all respects, left *Richmond* laden with a cargo of corn, on the aforesaid voyage, on the sixteenth day of April 1837, four days previous to the date of said policies. That on the seventeenth day of April, in said year, the winds and current drove her on the *Western Shore of James River*, and on *Goods Rocks*, whereby by the perils of the seas, she was totally lost, notwithstanding all due efforts of the captain and crew to save her. That on the seventeenth day of April 1837, the day of said vessel's grounding as aforesaid on said *Rocks*, the captain addressed to the said plaintiff a letter, which, marked C, is here presented as part of this statement, which letter, it is admitted, was delivered at the post office in *Richmond*, in the afternoon of said 17th April, and was post marked accordingly, of that date, and in due course of mail must have arrived at the post office in *Baltimore* on the 20th April, in the morning, between three and four o'clock, and could have been had at the post office, if applied for, on that day, at the hour of seven o'clock in the morning. It is also admitted, that the plaintiff, at the time of making said insurance, was, and for several years before had been, a resident of the city of *Baltimore*; that he is not a merchant, and has no place of business or counting room other than his private dwelling; that his letters, at the periods aforesaid, were not taken to him by a letter carrier, but were called for by him at the post office in *Baltimore*, or sent for thence by him; that on the 19th April 1837, he called at the said office, and received then the letter hereinafter mentioned, dated 14th April 1837, and that he did not afterwards call at said office for letters until the 24th April, when he received the aforesaid lettter of 17th April; that on receiving the said letter he in due form abandoned said vessel to the defendant. It is further admitted, that on the 19th April aforesaid, the plaintiff received from the captain of the said vessel the letter dated 14th April, above referred to, which letter, having been lost or mislaid, it is ad

mitted, that it in substance stated, that the captain aforesaid had obtained a freight for said vessel from *Richmond* to *Portland*, and that he expected to sail with her on the 16th or 17th April. That on this letter and the information it gave, the plaintiff on the 20th April 1837, applied for insurance to the defendant, by an order, which, marked D, is here exhibited as part of this statement; that the answer of the defendant, as noted at foot of said order, was given at two o'clock, P. M. of said 20th April, and that between the hour of two and the hour of five, P. M. of that day, the terms of the defendant were excepted by the plaintiff, by his writing on said order, "Accepted. *Benjamin Robinson*," and then delivering said order at the office of the defendant. That the information in said letter of 17th April, if known to plaintiff, would have been material to the risk; and if the court shall, on these stated facts, be of opinion that the plaintiff had notice, either actual or constructive, of the loss of the schooner *Wildee*, or of the contents of said letter of 17th April, prior to the making of said insurance, or shall be of opinion, that the plaintiff was guilty of such laches in not calling regularly for his letters at the post office, and receiving the intelligence of the loss communicated by said letter, as will vitiate said insurance, then and in either case, their judgment must be for the defendant,—otherwise, for the plaintiff, for the sum of twenty-eight hundred and fifty-one dollars and sixty-four cents, with interest from the 14th August 1837, and costs of suit.

The policies A and B, were in the usual form on vessel and freight.

(C.) "*Dear Sir*,—I left the port of *Richmond* yesterday, with a load of corn, bound to *Portland*, and about 2 o'clock run on *Goods' Rocks* near the bar. The vessel does not appear to be damaged, although the cargo no doubt is. If you have any instructions to give, I wish you to write. I have noted my protest, and proceeded according to law, for the benefit of all concerned.    Yours, in a hurry,

*April* 16, 1837.    JOHN HAYES."

(Endorsed,)   "*Mr. Benj. Robinson, Baltimore, Maryland.*"

"*April* 24. I certify that this letter was delivered to *B. Robinson*, on the morning of the 24th.    J. H. HANSON.

(D.)  "*Benjamin Robinson* wants insurance against all risks, for whom it may concern, for $3000, on the schooner *Wildee* of *Baltimore*, valued at that sum, at and from *Richmond, Virginia*, to *Portland* in *Maine*, and at and from thence with the liberty of touching and trading at *New York*, to the port of *Baltimore*; also on the freight of said vessel $350, to be valued at that sum out, and the same back. Please name a premium for the above, and what return if the risk ends at the time of her leaving *Portland*. The *Wildee* was expected to leave *Richmond* about the 15th or 16th of the present month.

*Baltimore, April* 20*th,* 1837.

"2 per cent. to return, 1 per cent. if the risk end at *Portland*, and no loss happen; or ¾ per cent. if the risk end without loss at *New York;* or ¼ per cent. if the vessel proceed direct from *Portland* to *Baltimore*."

The county court on the statement, rendered judgment for the plaintiff, and the insurance company appealed to this court.

The cause was argued before STEPHEN, DORSEY, CHAMBERS, and SPENCE, J.

By MAYER for the appellant, and
By McMAHON for the appellee.

CHAMBERS, J., delivered the opinion of the court.

The claim of the appellee upon this policy of insurance, has been resisted on the ground, that under the circumstances of this case, he is to be charged with notice of the loss prior to the insurance, or at least with such neglect as will vitiate the policy. That the contents or existence of the letter of 17th April, were known to him *in fact*, is not alleged in the statement of facts, nor could it by any just inference be deduced therefrom, if indeed, the court could make inferences of fact, which is certainly not the case. The statement in reference to this matter is, that the appellee, on the 19th of April applied at the post office, (where his letters remained till he called for

them,) and received the letter of 14th of April, and on the following day, the 20th; effected the insurance; and that he did not call again at the post office, until 24th April, when he received the letter of 17th, informing him of the loss.    It being then conceded, that the facts stated do not prove actual knowledge of the letter of 17th of April, and consequently of the loss of the schooner, we are to decide whether they make a case, from which the law will impute the consequences of knowledge, and imply concealment, suppression or negligence, on the part of the assured to vitiate the policy.

The principles advanced on the part of the appellant, on the authorities cited, may all be admitted, and yet we do not think they will furnish an affirmative answer to this question. That the assured acted with entire good faith, and without any design to impose upon himself a condition of ignorance, the facts afford sufficient evidence to prove.    It is very true, that in many instances negligence will be visited with the same penalty, as wilful design to do wrong.    Thus, if a party with knowledge, that his agent is in treaty for insurance, obtains information of a material fact, he is bound promptly to use the means of communicating it.    The impossibility of fixing a definite limit, between prompt attention, and unreasonable delay, and the difficulty of certainly ascertaining the motives and excuses, for all intervening grades of despatch, in performing an admitted duty, make such a rule imperatively necessary.    When the principles of fair dealing, as well as the rules of law, require a fact to be communicated, if known, and time enough had elapsed within which to communicate it, and a means of conveying it had presented, it would be fatal to the rights of the party to require him to prove bad motives for the delay.    Justice requires the same standard in this respect for the man of active industry as for the habitually indolent, and wisely says, what a man is thus obliged to do, he must do promptly, and diligently, or bear the consequences of his neglect.

But we do not think the case before us is one where the party has neglected a duty.

He was under no obligation to go to the post office, nor had he as far as the facts are disclosed, any cause to expect information. In point of fact, it was solely in consequence of the loss of the schooner, that the captain did write.

The principle relied on by the appellant is, that the assured is bound to use all accessible means of information, at the very last instant of time, to ascertain the condition of the property insured.

We do not think this principle recognised by any adjudged case, and if carried out to its legitimate, indeed, necessary, results, would embarrass the whole doctrine of insurance, with complicated and endless difficulties.

We approve the opinion expressed by the county court of *Baltimore,* and affirm the judgment.

JUDGMENT AFFIRMED.